UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JOY GARNER, individually and on behalf of The Control Group; JOY ELISSE GARNER, individually and as parent of J.S. and F.G.; EVAN GLASCO, individually and as parent of F.G.; TRACI MUSIC, individually and as parent of K.M. and J.S.; MICHAEL HARRIS, individually and as parent of S.H.; NICOLE HARRIS, individually and as parent of S.H.,<br><br>    Plaintiffs,<br><br>  v.<br><br>JOSEPH R. BIDEN, in his official capacity as PRESIDENT OF THE UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 2:20-cv-02470-WBS-JDP<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS'S MOTION TO DISMISS, PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, AND PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE |

----oo0oo----

Plaintiffs Joy Garner, individually and on behalf of The Control Group, Joy Elisse Garner, individually and as parent of J.S. and F.G., Evan Glasco, individually and as parent of

1

1  F.G., Traci Music, individually and as parent of K.M. and J.S.,
2  and Michael and Nicole Harris, individually and as parent of
3  S.H., ("plaintiffs") brought this action against Defendant
4  President Joseph R. Biden ("the President") attempting to allege
5  violations of the presidential oath of office, the First
6  Amendment, various violations of the Due Process Clause of the
7  Fifth Amendment, the Fourth Amendment, the Eighth Amendment, the
8  Thirteenth Amendment, the Fourteenth Amendment, the Ninth
9  Amendment, and the Tenth Amendment.
10            Presently before the court are the President's Motion
11  to Dismiss plaintiffs' first amended complaint ("Mot. to
12  Dismiss") (Docket No. 28.), plaintiffs' Motion for Preliminary
13  Injunction ("Mot. for Prelim. Inj.") (Docket No. 16), and
14  plaintiffs' Motion for Judicial Notice ("Mot. for Judicial
15  Notice") (Docket No. 4).
16  I.   Factual and Procedural Background
17            Plaintiff Joy Garner founded and operates The Control
18  Group, a non-profit organization that surveyed unvaccinated
19  individuals for the purpose of this litigation. (See First Am.
20  Compl. at ¶ 37.) (Docket No. 21). Garner lives in Roseville,
21  California. (See id. at ¶ 36.) On July 4, 2020, the Control
22  Group completed its tabulations of the results to date from its
23  nationwide pilot survey of 1,482 completely unvaccinated
24  Americans of all ages. (See id. at ¶ 37.)
25            Plaintiffs Elisse Garner and Evan Glasco have two minor
26  children, J.S. and F.G., who are unvaccinated. (See id. at ¶
27  40.) They live in Grass Valley, California. (See id.) J.S. and
28  F.G. are allegedly unable to go to public or private school in

California, although they would like to, because California Health and Safety Code § 120325 requires vaccinations for school children to attend school unless they have a medical excuse. (See id. at ¶ 40(h).)  Garner and Glasco have religious objections to vaccines and believe that there are serious health risks associated with vaccines. (See id. at ¶ 40(g-i).)  Garner and Glasco also state that they have been denied "access to certain professions for themselves, not only within the state of California, but in many of the most populated American States they might wish to move to in the future." (See id. at ¶ 40(i).)

Plaintiffs Michael and Nicole Harris are the parents of S.H., an unvaccinated child. (See id. at ¶ 41.)  They live in Carlsbad, California. (See id.)  They have religious objections to vaccines. (See id. at ¶ 41(g).)  S.H. is allegedly unable to go to public or private school in California, although he would like to, because California Health and Safety Code § 120325 requires vaccinations for school children to attend school unless they have a medical excuse. (See id. at ¶ 41(h).)

Plaintiff Traci Music is the parent of K.M. and J.S., two unvaccinated children. (See id. at ¶ 42.)  The Music family lives in Alabama but may be transferred to another state during the pendency of the proceeding because Music's husband is an officer in the military. (See id.)  Music has a religious objection to vaccination. (See id. at ¶ 42(g).)  Music also contends that her child S.S. suffered from multiple injuries as a result of vaccination, including legal blindness in her left eye and partial deafness. (See id. at ¶ 42.)  Music allegedly felt extreme pressure to vaccinate S.S. by a physician in Arizona who

3

1  threatened to contact Arizona Child Protective Services if she
2  did not vaccinate S.S.  (See id. at ¶ 42(j).)  While living in
3  North Carolina, Music also claims to have been the subject of an
4  anonymous and complaint to North Carolina Child Protective
5  Services where the basis of the complaint was that Music was
6  homeschooling her children and did not vaccinate them.  (See id.
7  at ¶ 42(k).)  Given the Music family's active military status,
8  the Music family "remains in a constant state of uncertainty"
9  whether they will find themselves unexpectedly and unpredictably
10 in a state that does not recognize a religious exemption to
11 vaccination.  (See id. at  ¶ 42(h).)
12          Plaintiffs seek a preliminary injunction to guarantee
13 that an unvaccinated control group (i.e. a group of completely
14 unvaccinated Americans who could be studied in comparison to
15 vaccinated Americans) remain intact and free from discrimination
16 and coercion with respect to their military service, education,
17 livelihood, and religious freedom.  (See Mot. for. Prelim. Inj.
18 at 2.)
19 II.  Discussion
20          A motion to dismiss for lack of a case or controversy
21 under Article III of the Constitution must be analyzed under
22 Federal Rule of Civil Procedure 12(b)(1).  See Chandler v. State
23 Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121 (9th Cir. 2010);
24 Fed. R. Civ. P. 12(b)(1).  On such a motion the court must accept
25 as true all material allegations in the complaint and must
26 construe the complaint in the nonmovant's favor.  See Bernhardt
27 v. County of Los Angeles, 279 F.3d 862, 867 (9th Cir. 2002).  The
28 court may not speculate as to the plausibility of the plaintiff's

allegations.  See id.

The Constitution limits federal courts' jurisdiction to cases and controversies, which includes the requirement that each plaintiff have standing with respect to each claim he or she asserts.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60 (1992).  To establish standing, a party must demonstrate three elements.  See id. at 560.  First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  See id.  Second, there must be a causal connection between the injury and the conduct complained of; the injury has to be "fairly . . . trace[able] to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court."  Id.  Third, it must be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision."  Id. at 561.  The party invoking federal jurisdiction bears the burden of establishing these elements.  See id.

For the purposes of this discussion, the court assumes, but does not decide, that plaintiffs can demonstrate that they have suffered an injury in fact.  However, plaintiffs acknowledge multiple times that the President "is not the sole cause of" their purported injuries.  (See First Am. Compl. at ¶¶ 20, 117, 127, 144, 148, 157, 163.)  That is an understatement.  The first amended complaint contains no allegation that any department or agency of the federal government, much less the President, is responsible for any of their alleged injuries.  To the contrary,

plaintiffs even note that there is no mandatory vaccine federal requirement and that the Center for Disease Control ("CDC") recommended vaccine schedules are not mandated.  (See First Am. Compl. at ¶ 52(a).)

Instead, plaintiffs allege throughout their first amended complaint that the actions complained of are the result of independent actions by third parties not before the court. Several plaintiffs complain that their children are unable to attend school in California because they have religious objections to vaccination.  (See id. at ¶¶ 40(h), 41(h).) However, as plaintiffs acknowledge, it is not a federal law that prohibits their children from attending school in California, but a law passed by the state of California.  See Cal. Health & Welfare Code § 120325; (See First Am. Compl. at ¶¶ 40(h), 41(h).)

Plaintiff Music alleges that she was visited or threatened with a visit by child protective services in North Carolina and Arizona, (see id. at ¶¶ 42(j-k)), but again there are no facts suggesting that any federal law or federal entity, much less the President, was in any way involved with those incidents.  Plaintiffs likewise repeatedly state that many of the perceived threats and alleged discrimination to unvaccinated populations stem from local governments.  (See id. at ¶¶ 52(a), 74, 143, 147, 155.)

In sum, there are no allegations in the first amended complaint to support even an inference that the injuries plaintiffs complain of are traceable to any act or omission of the President but rather result from the conduct of independent

6

third parties not before the court.[1]

Plaintiffs likewise fail to sufficiently allege that their claimed injuries will be redressed by a favorable decision in this action. "To establish redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." Juliana v. United States, 947 F.3d 1159, 1170 (9th Cir. 2020). Here, the court cannot envision how anything it could constitutionally order the President to do in this action would remediate any of plaintiffs' alleged injuries.

The relief plaintiffs seek in this action is to have the court order the President to take unspecified actions to prevent purported discrimination against vaccine objectors,

---

[1] Plaintiffs claim that "only the President of the United States of America and Commander in Chief of the Armed Forces has the authority to protect Petitioners from the myriad and ever-shifting initiatives to vaccinate every individual in America as much as possible, which have stoked hatred and vilification of unvaccinated Americans." (See First. Am. Compl. at ¶¶ 60–61.) They also contend that it is the President's duty to acknowledge that America has been segregated and to take some appropriate action to either desegregate or justify the continued infringement upon Petitioners' 5th Amendment and other rights. (See id. at ¶ 107.) Plaintiffs further contend that the "President, by omission of oversight, has not prevented the vilification, infliction of threats, and coercion of mandatory vaccination upon [plaintiffs] which has placed [them] in a position of actual, particularized danger, threatening national security." (See id. at ¶¶ 120–21.) They also state that the President "has actively supported subordinate executive agencies and myriad others contributing to the 'predicament' (by which they mean chronic illnesses allegedly caused by vaccines) in spite of their known and obvious dangers." (Id.) Such generalized and politically charged assertions demonstrate a lack of appreciation of the respective roles of the President and the courts under our Constitutional system, and this court need not dignify them with any further discussion or response.

perform a national survey of unvaccinated Americans, and then establish a national informed consent system whereby "vaccines shall not be administered unless the patient has reviewed the actual numerical increased risks of disease, disability, and death associated with exposure to vaccines" in the short and long term. (See id. at ¶ 172.)  It requires a stretch of the imagination to see how such an order would compensate plaintiffs for their past injuries or prevent any future injuries resulting from their refusal to be vaccinated or their being compelled to be vaccinated.  Even if the court granted the declaratory or injunctive relief sought by plaintiffs, it would not invalidate the provisions of California law -- or similar provisions in other states' laws -- which allegedly require students to be vaccinated in order to attend school. (See First Am. Compl. at ¶¶ 40(h), 41(h).)

        For the foregoing reasons, plaintiffs have failed to sufficiently allege standing to pursue their claims against the President in this action.  "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal."  See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998)(internal citations omitted).  Here, in order to overcome the lack of standing, plaintiffs would have to seek entirely different relief against an entirely different defendant or defendants.  That, in essence, would have to be an entirely different action.  The court will accordingly not grant plaintiffs leave to further amend their complaint in this case.

        IT IS THEREFORE ORDERED that the United States' motion to dismiss, (Docket No. 28), be, and the same hereby is, GRANTED and the case is DISMISSED WITH PREJUDICE.  Because the court lacks jurisdiction to hear plaintiffs' claims, the court DENIES plaintiffs' Request for Judicial Notice (Docket No.4) and Motion for Preliminary Injunction (Docket No. 16).[2]

        The Clerk of Court is instructed to enter judgment accordingly.

Dated:  February 22, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[2]  The court notes plaintiffs' objection to "this Court's rush briefing schedule that afforded petitioners' five calendar days to file an opposition brief to respondent's motion to dismiss."  (See Opp'n to Mot. to Dismiss at 18) (Docket No. 31).)  However, at the status conference held on February 1, 2021, the court informed all parties that it would be helpful to hear defendant's motion to dismiss at the same time as plaintiffs' motion for preliminary injunction and request for judicial notice.  (See Docket No. 27.)  The reason that an accelerated briefing schedule was necessary was because plaintiffs refused to stipulate to a one month continuance and insisted that the court keep the scheduled hearing date of February 22, 2021 for plaintiff's request for a preliminary injunction.  The court further notes that at the February status conference, all parties agreed to an accelerated briefing schedule.